IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-858

Filed 5 August 2026

Wake County, No. 22CV013864-910

JOINT ENTITIES, LLC, and NICOLE LECANN DDS, Plaintiffs,

v.

SHARON COBHAM, D.D.S., Defendant.

Appeal by Defendant and third party from order entered 17 February 2025 by Judge Matthew T. Houston in Wake County Superior Court. Heard in the Court of Appeals 24 March 2026.

*Oak City Law, L.L.P., by Samuel Piñero, II, and Robert E. Fields, III, P.L.L.C., by Robert E. Fields, III, for Plaintiffs-Appellees.*

*Bennett Guthrie, P.L.L.C., by Joshua H. Bennett and Mitchell H. Blankenship, for Defendant-Appellant Sharon Cobham, D.D.S., and non-party Cobham & Associates, P.L.L.C.*

GRIFFIN, Judge.

Defendant Sharon Cobham, D.D.S., and alleged non-party Cobham & Associates, P.L.L.C. ("C&A"), appeal from an order in aid of execution and charging order entered 17 February 2025. They first argue the trial court lacked personal jurisdiction because C&A was neither a party nor given notice. Cobham further argues the trial court improperly restricted her salary and prohibited the transfer of her assets without proper identification. We hold Cobham cannot raise a personal jurisdiction defense for C&A and C&A cannot appeal as a nonparty. We further hold

the trial court improperly restricted Cobham's salary, but properly enjoined Cobham and her assets under N.C. Gen. Stat. §§ 1-358 and 1-362.

## I.  Factual and Procedural History

Plaintiff Nicole LeCann, D.D.S., and Cobham graduated from dental school and entered practice together as "co-managers" of multiple dental practices from 2000 until 2010.  Together, LeCann and Cobham formed Plaintiff Joint Entities, LLC ("Joint Entities").  After their professional relationship deteriorated, LeCann commenced a derivative action, on behalf of Joint Entities, against Cobham in the North Carolina Business Court ("the 2010 case").[1]  Joint Entities and LeCann alleged Cobham engaged in self-dealing, conflict of interest transactions, and other breaches of fiduciary duties.  The business court entered a judgment in favor of Joint Entities and LeCann and awarded them $559,888.00 in compensatory damages and $1,679,664.00 in punitive damages.  Cobham did not satisfy the judgment.

Joint Entities and LeCann moved to enforce the judgment under N.C. Gen. Stat. § 1-358.  The business court granted the motion for enforcement and enjoined Cobham and her agents and representatives "from disposing of, transferring or interfering with any property of [Cobham]" to avoid satisfaction of the judgment.

On 3 September 2013, LeCann moved to initiate supplemental proceedings under N.C. Gen. Stat. §§ 1-352 and 1-353 and to order Cobham to appear and answer.

---

[1] *LeCann v. Cobham*, Wake Cnty. No. 10 CVS 11169 (N.C. Super. Ct. Aug. 30, 2013).

The trial court granted the motion and ordered Cobham to appear and answer at the hearing scheduled for 11 September 2013. Cobham then moved to lift the section 1-358 injunction and LeCann moved to compel discovery and property in aid of execution. The trial court denied Cobham's motion to lift and granted LeCann's motion to compel.

On 6 January 2014, Cobham filed for bankruptcy.[2] The bankruptcy court held Cobham's debt could not be discharged. Cobham appealed to the United States District Court for the Eastern District of North Carolina.[3] The District Court affirmed the bankruptcy court's judgment, holding Cobham disregarded her fiduciary duties to Joint Entities and LeCann and her debt could not be discharged. The Fourth Circuit agreed.[4] After the close of the federal cases, Cobham still failed to satisfy the trial court's judgment.

Joint Entities and LeCann commenced the underlying action on 4 November 2022. In their complaint, Joint Entities and LeCann requested the trial court renew the 2010 judgments and impose $1,895,335.93 in interest and $147,247.05 in court costs upon Cobham. The complaint listed Cobham as the sole defendant in the matter. Cobham was served on 4 January 2023. She did not file any responsive pleadings or objections.

---

[2] *In re Cobham*, 528 B.R. 283 (Bankr. E.D.N.C. 2015).
[3] *In re Cobham*, 551 B.R. 181 (E.D.N.C. 2016).
[4] *In re Cobham*, 669 F. App'x 171 (4th Cir. 2016), *cert. denied*, 581 U.S. 973 (2017).

On 19 May 2023, the trial court entered a default judgment in favor of Joint Entities and LeCann. The judgment listed both "Sharon Cobham" and her business entity, "Sharon Jovanna Cobham, P.A., D.D.S." (hereafter, "Winston-Salem I"), as joint defendants. Cobham did not comply with the judgment. The Wake County Clerk of Superior Court issued a writ of execution to the Alamance County Sheriff to satisfy the judgment. The writ was returned unserved.

Joint Entities and LeCann filed a motion for order in aid of execution on 10 January 2025. Joint Entities and LeCann listed Cobham and Winston-Salem I as joint defendants. Joint Entities and LeCann attached an Amendment of Articles of Organization for Cobham & Kelly, P.L.L.C. ("C&K") to the motion. The Amendment showed C&K was renamed to C&A in 2024.

Cobham's counsel filed a notice of appearance on behalf of both Cobham and Winston-Salem I on 12 February 2025. The following day, the trial court held a hearing on Joint Entities and LeCann's 10 January 2025 motion. During the hearing, Cobham confirmed she is the sole member of C&A. After hearing from both parties, the trial court granted Joint Entities and LeCann's 10 January 2025 motion. The trial court ordered C&A and Winston-Salem I to make direct payments to Joint Entities and LeCann to satisfy Cobham's debts. The order also restricted Cobham from spending no more than $2,500.00 per month on her own personal support and mandated Cobham to provide a list of all her assets to Joint Entities and LeCann. The trial court further enjoined C&A and Winston-Salem I from transferring or

encumbering Cobham's assets.  Cobham and C&A timely filed a notice of appeal on 18 March 2025.

## II.  Analysis

Cobham first argues the trial court lacked personal jurisdiction over C&A. Second, she contends the trial court exceeded its statutory authority under Chapter 57D of the North Carolina General Statutes.  Third, Cobham claims the trial court improperly prohibited the transfer of Cobham's assets without their proper identification.

## A. Appellate Jurisdiction

The order before us is interlocutory and not ordinarily fit for this Court's review.  *Davis v. Davis*, 360 N.C. 518, 524, 631 S.E.2d 114, 119 (2006).  However, an interlocutory order is immediately appealable if the trial court certifies no just reason exists to delay appeal or if the interlocutory order affects a substantial right.  *Sharpe v. Worland*, 351 N.C. 159, 161–62, 522 S.E.2d 577, 579 (1999).  Interlocutory orders may also be immediately appealable if they, "[i]n effect determine[] the action and prevent[] a judgment for which an appeal may be taken."[5]  N.C. Gen. Stat. § 7A-27(b)(3)(b) (2025).

---

[5] N.C. Gen. Stat. § 7A-27(a)(2) states an appeal of right lies directly to the Supreme Court of North Carolina from "any final judgment in a case designated as a mandatory complex business case" or "as a discretionary complex business case."  N.C. Gen. Stat. § 7A-27(a)(2) (2025).  However, N.C. Gen. Stat. § 7A-27(a)(3) states an appeal lies of right to our Supreme Court from any interlocutory order of a business court judge.  On the other hand, appeal lies of right directly to our Court from any interlocutory order or judgment of a superior court or district court in a civil action or proceeding. N.C.

When an interlocutory order is entered after a valid, enforceable judgment, the case is "determined" by the valid, enforceable judgment. *Universal Life Ins. Co. v. Lindberg*, 291 N.C. App. 506, 510, 896 S.E.2d 57, 61 (2023). This Court has jurisdiction on appeal for an interlocutory order that is paradoxically determined when a defendant could only either comply with a potentially invalid order and satisfy the judgment or be held in contempt in order to appeal. *Id.* at 510, 896 S.E.2d at 61. Such a restriction in options prevents a judgment for which an appeal can be taken. *Id.* ("If these orders do not 'in effect determine the action,' no order will."); N.C. Gen. Stat. § 7A-27(b)(3)(b). Consequently, this Court has jurisdiction over such interlocutory appeals. *Lindberg*, 291 N.C. App. at 510, 896 S.E.2d at 61.

Here, the order before us is a charging order entered to enforce a valid, enforceable judgment from the 2010 case. The 2010 underlying judgment "determined" the action within the meaning of section 7A-27(b)(3)(b): Cobham is left to either satisfy the 2010 judgment or be held in contempt. These restricting options prevent a judgment for which an appeal can be taken. Therefore, the order is immediately appealable, and this Court has jurisdiction over this interlocutory appeal.

---

Gen. Stat. § 7A-27(b)(3) (2025). Here, we have an appeal from an interlocutory order from Judge Matthew T. Houston, a business court judge as well as a special superior court judge. The order at hand is not designated as a complex business case, but the statutory plain language leaves wiggle room for this order to have been brought directly to the Supreme Court of North Carolina. Nevertheless, we review this case as it also falls under section 7A-27(b)(3), an appeal from an interlocutory order of a superior court in a civil action.

## B. Personal Jurisdiction

Cobham and C&A argue the trial court lacked personal jurisdiction over C&A and therefore lacked authority to order C&A to comply with the 2010 judgments. Specifically, they contend C&A: (1) was never named as a party; (2) was never served with process; and (3) never made a general appearance concerning the 13 February 2025 hearing.

"Individuals and corporate entities have a 'liberty interest in not being subject to the binding judgments of a forum which [they] ha[ve] no meaningful contacts, ties, or relations.'" *State ex rel. Stein v. E.I. du Pont de Nemours & Co.*, 382 N.C. 549, 550, 879 S.E.2d 537, 539 (2022) (alteration in original) (citation omitted). "That liberty interest is protected by requiring courts—both state and federal—to have personal jurisdiction over a party before subjecting it to legal proceedings." *Id.* at 550, 879 S.E.2d at 539. A party who fails to properly raise a personal jurisdiction defense in the trial court may not assert it for the first time on appeal. *In re Howell*, 161 N.C. App. 650, 656, 589 S.E.2d 157, 160 (2003). Further, objections to a trial court's exercise of personal jurisdiction "must be raised by the parties *themselves.*" *In re J.T.*, 363 N.C. 1, 4, 672 S.E.2d 17, 18 (2009) (emphasis added).

Courts lack personal jurisdiction over nonparties and thus their orders are void when they are without notice or an opportunity to be heard. *Helbein v. S. Metals Co., Inc.*, 119 N.C. App. 431, 433, 458 S.E.2d 518, 519 (1995) (citations omitted). Void judgments are nullities. *Cunningham v. Brigman¸* 263 N.C. 208, 211, 139 S.E.2d 353,

355 (1964). Further, a "party who is subject to an order by a trial court which is void, may attack that order at any time." *Helbein*, 119 N.C. App. at 433, 458 S.E.2d at 519. However, a nonparty "is *not* entitled to appeal from the judgment of a lower court." *Watson v. Ben Griffin Realty & Auction, Inc.*, 128 N.C. App. 61, 63, 493 S.E.2d 331, 333 (1997) (citations omitted) (emphasis added). Rather, a nonparty's "remedy is to file an independent action to set aside this judgment." *Id.* at 64, 493 S.E.2d at 333.

Here, when Joint Entities and LeCann commenced the enforcement action in 2022, they listed Cobham as the sole defendant. No summons was issued for C&A, and the record does not contain an indication that C&A joined as a party. C&A does not appear until the 10 January 2025 motion. The record is also silent as to Cobham's predecessor entity, C&K, until the 10 January 2025 motion. Further, the record is silent as to whether C&A was present at any hearing, including the hearing which produced the order on appeal. Although Cobham's counsel stated he appeared "for the Defendants," the record reflects that representation referred only to Cobham and Winston-Salem I. During the hearing, Cobham mentioned C&A and C&K only to confirm Cobham is the sole member of C&A. C&A is therefore a nonparty and may not appeal the judgment.

Furthermore, Cobham cannot argue a lack of personal jurisdiction defense for C&A because, as our Supreme Court has indicated, objections to the court's exercise of personal jurisdiction must be raised by the party *itself*. *See J.T.*, 363 N.C. at 4, 672 S.E.2d at 18. We acknowledge C&A is not a "party," but we previously addressed the

avenue for C&A's remedy. Still, the principle stands that C&A must raise the defense itself. Thus, Cobham cannot raise such a defense for C&A.

**C. Charging Order**

Cobham also contends the trial court exceeded its authority by restricting her entities, including C&A among others, from paying Cobham a monthly salary of up to $2,500.00 as the order applies to future salary payments. On the other hand, Joint Entities and LeCann contend our General Assembly, via the LLC Act, created a specific mechanism to apply a debtor's economic interest in an LLC which includes value to be distributed by the LLC to the debtor in the future.

We turn to interpret the LLC Act. We review questions of statutory interpretation de novo. *Kidd Constr. Grp., LLC v. Greenville Utils. Comm'n*, 271 N.C. App. 392, 397, 845 S.E.2d 797, 800 (2020). In statutory construction, we primarily ensure legislative intent and purpose is accomplished. *In re Ivey*, 257 N.C. App. 622, 627, 810 S.E.2d 740, 744 (2018) (citation omitted). This Court first ascertains legislative purpose from the plain words and meaning of the statute. *Id.* (citations omitted). A statute clear on its face must be enforced as such. *Id.* (citations omitted). If a statute's terms are ambiguous, we resort to other accepted tools of statutory construction to ascertain the intent of the legislative body, including the traditional statutory interpretation to include or exclude by implication which is not clear by express terms. *See Arter v. Orange Cnty.*, 386 N.C. 352, 354–55, 904 S.E.2d 715, 717 (2024) (citations omitted).

When terms are not defined by the General Assembly, the terms "must be given their common and ordinary meaning." *Lindberg*, 291 N.C. App. at 516–17, 896 S.E.2d at 65 (internal quotations omitted). "Absent precedent, we look to dictionaries to discern a word's common meaning." *Id*. at 517, 896 S.E.2d at 65.

Superior courts have jurisdiction to enforce the provisions of the LLC Act. N.C. Gen. Stat. § 57D-1-02(b) (2025). The entry of a charging order is the only way a judgment creditor may satisfy a judgment using the judgment debtor's ownership interest. N.C. Gen. Stat. § 57D-5-03(d) (2025). The LLC Act permits the superior courts to "charge the *economic interest* of an interest owner [of an LLC] with the payment of the unsatisfied amount of [a] judgment with interest" and the relevant judgment creditor only has "the right to receive the *distributions* that otherwise would be paid to the interest owner with respect to the economic interest." N.C. Gen. Stat. § 57D-5-03(a) (2025) (emphasis added). Such "economic interest" is the "proprietary interest of an interest owner in the capital, income, losses, credits, and other economic rights and interests of [an LLC], including the right of the owner of the interest to receive *distributions* from the [LLC]." N.C. Gen. Stat. § 57D-1-03(10). "Distribution" is defined as "the direct or indirect transfer of money or other property to, or incurrence of indebtedness by, an LLC for the benefit of an interest owner *in respect of the interest owner's ownership interest.*" N.C. Gen. Stat. § 57D-1-03(9) (2025) (emphasis added). The statute's definition continues to state that for N.C. Gen. Stat. §§ 57D-4-05, 57D-4-06, and 57D-6-12, "'distribution' does not include

payments made to, or an account of, an interest owner that constitute compensation for services." *Id*.

The future earnings of a judgment debtor are hypothetical and thus are neither property nor debt. *Jacobi-Lewis Co., Inc. v. Charco Enters., Inc.*, 121 N.C. App. 500, 501, 466 S.E.2d 338, 339 (1996) (citation omitted). Thus, a trial court cannot reach prospective earnings by supplemental proceedings. *Motor Finance Co. v. Putnam*, 229 N.C. 555, 557–58, 50 S.E.2d 670, 671–72 (1948).

Here, one question is whether Cobham's salary from her entities, including in relevant part an LLC, constitutes a "distribution" under Chapter 57D. The order states Cobham's "entities may, without violating this Order, collectively pay [Cobham] a monthly salary of up to $2,500 in the aggregate." Although Chapter 57D does not define "salary," it commonly means a "fixed compensation paid regularly for services." Salary, Merriam-Webster Dictionary (last visited July 9, 2025). In analyzing the statutory language, "distribution" is qualified by the clause, *in respect of the interest owner's ownership interest*. Consequently, this definition concerns Cobham's *ownership interest*. Therefore, Chapter 57D's definition of "distribution" does *not* include a salary, or compensation for services, doled out by the LLC. As Cobham's salary here does not constitute a "distribution," the superior court could not charge Cobham's future earnings.

We note that the statute does highlight three statutory sections where the General Assembly expressly did not want to include "compensation for services" as a

"distribution." While the omission of an express exclusion implies the inverse, that is the inclusion of "compensation for services" as a "distribution," this statutory construction only *follows after* we ascertain the plain, ordinary meaning of the statute. *Arter*, 386 N.C. at 354, 904 S.E.2d at 717 (clarifying we resort to other accepted tools of statutory construction to determine the legislative body's intent if the language is ambiguous and we cannot discern the meaning from the plain terms). Instead, the plain meaning of the statute does *not* indicate "distribution" includes "compensation for services."

Joint Entities and LeCann also suggest "income," within the statutory definition of "economic interest" means the superior court could charge Cobham's "salary." We disagree. The economic interest definition states it is the *proprietary interest* of an interest owner in income and other economic rights and interests (and more) *of an LLC*. The plain language of this statutory definition indicates that the income is that *of* the LLC, and not the salary that is paid out from the LLC.

The trial court exceeded its authority under section 57D-5-03(a) by restricting Cobham's salary. Accordingly, we reverse and vacate the portions of the charging order restricting Cobham's salary.

**D. Injunction**

Lastly, Cobham argues the trial court erred by enjoining Cobham and C&A from transferring, encumbering, or disposing of any of Cobham's assets until the underlying judgment is satisfied. Cobham specifically argues Joint Entities and

LeCann "presented no evidence" that Cobham owned or possessed any assets beyond her ownership interests in her entities. Cobham further argues the trial court's injunction is defective because it fails to properly define Cobham's "assets" with sufficient specificity and therefore fails to meet the "specific terms" requirement under Rule 65(d).

We review a trial court's decision to prohibit parties from transferring or disposing of a party's assets under section 1-358 for abuse of discretion. *See Radiance Cap. Receivables Twenty One, LLC v. Lancsek*, 286 N.C. App. 674, 681, 881 S.E.2d 883, 889 (2022). The trial court abuses its discretion when it "makes a patently arbitrary decision, manifestly unsupported by reason." *Buford v. Gen. Motors Corp.*, 339 N.C. 396, 406, 451 S.E.2d 293, 298 (1994) (citations omitted).

A trial court may order any property "in the hands of the judgment debtor or of any other person, or due to the judgment debtor, to be applied towards the satisfaction of the judgment." N.C. Gen. Stat. § 1-362 (2025). Also, a trial court may, "by order, forbid a transfer or other disposition of, or any interference with, the property of the judgment debtor not exempt from execution." N.C. Gen. Stat. § 1-358 (2025). A judgment debtor may seek an exemption by moving to claim exempt property under N.C. Gen. Stat. § 1C-1603. *Household Fin. Corp. v. Ellis*, 107 N.C. App. 262, 264, 419 S.E.2d 592, 594 (1992). These exemptions must be served upon the judgment creditor. N.C. Gen. Stat. § 1C-1603(d) (2025). A proper exemption allows the specified property to be free from claims from the judgment creditor. N.C.

Gen. Stat. § 1C-1604(a) (2025).  When a judgment debtor fails to exempt property, his or her property is fully subject to sections 1-358 and 1-362.  *Lindberg*, 291 N.C. App. at 514, 896 S.E.2d at 63.

Every order granting an injunction must give the reasons for its issuance, be specific in terms, and describe in reasonable detail (and not by reference to the complaint or other document) the act(s) enjoined.  N.C. R. Civ. P. 65(d) (2025). Undefined terms in an injunction order does not necessarily indicate the terms are not "specific" under Rule 65(d).  *See S. Blvd. Video & News, Inc. v. Charlotte Zoning Bd. of Adjustment*, 129 N.C. App. 282, 290, 498 S.E.2d 623, 628 (1998); *Songwooyarn Trading Co. v. Sox Eleven, Inc.*, 219 N.C. App. 213, 218, 723 S.E.2d 569, 573 (2012) (holding the trial court's prohibition on a defendant's transfer, disposal, or removal of property or *assets* was squarely within the authority conferred by section 1-358).  If no showing was made "as to any previous difficulty on the part of either party in understanding the language used," an injunction may be sufficiently specific under Rule 65(d).  *See Auto. Dealer Res., Inc. v. Occidental Life Ins. Co. of N.C.*, 15 N.C. App. 634, 641, 190 S.E.2d 729, 734 (1972).  In analyzing the "reasonable detail" requirement, this Court analyzes "whether the party enjoined can know from the language of the order itself, and without having to resort to other documents, exactly what the court is ordering it to do."  *Id.* at 641–42, 190 S.E.2d at 734.

Here, Cobham did not claim any property or asset exemptions in either the 2010 case or the underlying action. Thus, the trial court was authorized to enjoin her to the fullest extent of sections 1-358 and 1-362.

The injunction order states Cobham and C&A are enjoined from transferring, encumbering, or disposing of any of Cobham's assets. The order goes on to specify such assets include, but are not limited to, Cobham's membership or economic interests in any LLC, professional association, corporation, or other organization. Further, the order mandates Cobham to provide information regarding her assets, "including depository accounts and all tangible and intangible property, whether real or personal, as well as all property disposed of by her in the last 12 months" to Joint Entities and LeCann. Cobham did not demonstrate a previous difficulty in understanding "assets." "Asset" is defined as "the entire property of a person, association, corporation, or estate applicable or subject to the payment of debts." Asset, Merriam-Webster Dictionary (last visited July 9, 2025). Both the plain meaning and context within the order sufficiently support the term's specificity mandate. Furthermore, a trial court may enjoin Cobham from transferring, encumbering, or disposing of her *assets* within the authority conferred by section 1-358. *See Songwooyarn Trading Co.*, 219 N.C. App. at 218, 723 S.E.2d at 573. Cobham also contends Joint Entities and LeCann did not present evidence of her assets;

however, the order instructed Cobham herself to disclose her assets and the trial court had the authority to do so.[6] *See* N.C. Gen. Stat. § 1-352.2 (2025).

The language from the trial court's order informs the party enjoined, and without having to resort to other documents, what the court is ordering Cobham to do. We hold the injunction order was sufficiently specific to meet Rule 65(d) requirements and supported by reason. Therefore, the trial court did not abuse its discretion.

## III. Conclusion

We hold Cobham could not raise a personal jurisdiction defense for C&A and C&A could not argue a personal jurisdiction defense on appeal as a nonparty. We further hold the trial court properly enjoined Cobham's assets under sections 1-358 and 1-362 and affirm that portion of the order. We last hold the trial court erred in restricting Cobham's salary, and reverse and vacate that portion of the order.

AFFIRMED IN PART, REVERSED AND VACATED IN PART.

Judge WOOD concurs.

Chief Judge DILLON concurs in part and dissents in part by separate opinion.

---

[6] Cobham also attempts to argue that the *sequential* order of the statutes within Article 31 indicates that such statutes are to be *chronologically* followed in the order in which they appear. However, the statutes within Article 31 do not have such a requirement. Further, beyond simply citing those statutes, Cobham fails to provide persuasive support for this argument.

DILLON, Chief Judge, concurring in part and dissenting in part.

I fully concur in the majority opinion except I believe the trial court did not err in its treatment of Defendant's salary. I agree with the majority that any salary paid to Defendant for work she performs would not be subject to the charging order. However, I conclude, based on the evidence in this case, the trial court may monitor any distributions made by Defendant to herself from her limited liability companies ("LLC's") to ensure the distributions are, in fact, "salary".

Here, the trial court has not limited Defendant to $2,500.00/month salary. Rather, the trial court has simply required Defendant to obtain trial court approval before paying herself anything more, in which case, she would have to show that the payment really is "salary" and not a "distribution". Otherwise, Defendant – being the sole member of her LLC's – could distribute *any* amount to herself from these LLC's and call it "salary" to avoid the reach of a charging order.

I note that if a sole or dominant member of an LLC uses that LLC simply to hide assets from judgment creditors, the "corporate veil" of that LLC may be subject to being "pierced". *See Cooper v. Ridgeway*, 362 N.C. 431, 440-41 (2008) (holding that "corporate form [may be] disregarded if the corporation is so operated that it is a mere instrumentality or *alter ego* of the sole or dominant shareholder and a shield for his activities in violation of the declared public policy of the State"). However, whether the LLC's here are subject to piercing is not before us.